[No. 39229.    Department Two.    March 28, 1968.]

WASHINGTON OPTOMETRIC ASSOCIATION, INC., et al., *Appellants*, v. COUNTY OF PIERCE et al., *Respondents*.*

*Frank August Peters, Hager & Young,* and *Wolff & Shields,* for appellants.

*Marshall McCormick, Edward J. Guenther, Ronald L. Hendry, Grant Anderson, Hugo Metzler, Jr.,* and *Seinfeld & Seinfeld,* for respondents.

FINLEY, C. J.—This is an appeal by plaintiffs from an order dismissing their complaint. The substance of the issue before us is whether cities and counties are prevented by RCW 18.53.160 from contracting on behalf of their employees with health-care service contractors who, *inter alia,*

*Reported in 438 P.2d 861.

provide ocular care, but who do not accept the services of licensed optometrists.

During January 1966, the city of Tacoma and Pierce County (hereinafter referred to as "city" and "county"), pursuant to the provisions of RCW 41.04.180, individually entered into health-care service contracts with the Pierce County Medical Bureau (hereinafter referred to as "bureau"), a health-care service contractor as defined in RCW 48.44.010(3). The city and county make payments to the bureau on the basis of the number of their employees covered by the contracts. In return, the bureau provides the city's and county's employees with hospitalization, medical treatment, and other health-care services. These services include eye tests to ascertain the refractive, muscular, or pathological condition of an employee's eyes.

On April 11, 1966, plaintiff-Hanford, a licensed optometrist whose professional services include giving the same type of eye tests mentioned above, applied for an agency agreement with the bureau; this application was rejected. Plaintiff-Hanford submitted statements to the bureau for services rendered to bureau contract subscribers; the bureau refused to pay. Thereafter, an action was commenced in Pierce County Superior Court by (1) the Washington Optometric Association, Inc., a nonprofit corporation with a membership limited to licensed optometrists, and (2) plaintiff-Hanford, a taxpayer and member of plaintiff-corporation, against the city, county, and bureau, to void the health-service contracts between the city and county and the bureau and to enjoin the city and county from making further payments to the bureau pursuant to the contracts. An additional defendant, Western Clinic, intervened because of a similar contract which it has with the Police Pension Board of the city of Tacoma.

Defendants moved to dismiss the action under RPPP 12(b) (now CR 12(b)). They alleged (1) the trial court lacked jurisdiction over the subject matter, (2) the trial court lacked jurisdiction over defendants, (3) the complaint failed to state a claim upon which relief can be granted, and (4) plaintiffs failed to join indispensible par-

ties. Defendants supplemented their motion with affidavits of David D. Rowlands, city manager of the city; Harry Sprinker, Chairman of the Board of Pierce County Commissioners; Lawrence J. Evoy, manager of the bureau; and Richard E. S. Adams, business manager of Western Clinic. The trial court granted defendants' motion to dismiss and plaintiffs appealed.

The basis for the trial court's order is not altogether clear. The trial judge stated that he was dismissing plaintiffs' complaint because it "fails to state a cause of action" and because the court had "no jurisdiction over the subject matter." On appeal, plaintiffs have assumed the dismissal was for failure to state a claim upon which relief can be granted and defendants have assumed that the dismissal was at least in part in the nature of a summary judgment under RPPP 56 (now CR 56).

Without becoming too immersed in the technicalities of our court rules, it seems clear from our reading of the record that the assumptions of both parties are at least partially correct. It is apparent that the trial court did have jurisdiction over the subject matter of the litigation,[1] so the order dismissing the action was properly predicated only upon failure to state a claim upon which relief can be granted as provided in RPPP 12(b)(6). In addition, since the trial judge also considered supporting affidavits, we are required by RPPP 12(b) to treat the order as we would one for summary judgment under RPPP 56.

Under RPPP 56(c), a summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See*

---

[1]The term "jurisdiction over the subject matter" means authority of a court to hear and determine the class of actions to which the one to be adjudicated belongs and authority to hear and determine a particular question which it assumes to determine. *State ex rel. Troy v. Superior Court*, 38 Wn.2d 352, 229 P.2d 518 (1951). We can see no basis, and none was cited to or relied upon by the trial court nor is urged on appeal, for concluding that jurisdiction over the subject matter was lacking.

*Gaines v. Northern Pac. Ry.,* 62 Wn.2d 45, 380 P.2d 863 (1963); *Brannon v. Harmon,* 56 Wn.2d 826, 355 P.2d 792 (1960). In the instant case, the parties have agreed that there is no material issue of fact. Thus the question with which we are confronted is whether the pleadings and affidavits filed show that defendants were entitled to a judgment as a matter of law.

■ Defendants contend that because the trial judge made certain findings and conclusions relative to this case in his dismissal order and plaintiffs did not assign error to them, they are the established facts and conclusions of the case and binding upon plaintiffs. Were this the case, there would be no need for us to proceed further since the trial judge's conclusions of law amply support his order. However, we have held on numerous occasions that findings of fact and conclusions of law are superfluous in both summary judgment and judgment on the pleadings proceedings. *E.g., State ex rel. Carroll v. Simmons,* 61 Wn.2d 146, 377 P.2d 421 (1962); *State ex rel. Zempel v. Twitchell,* 59 Wn.2d 419, 367 P.2d 985 (1962). Thus, failure to assign error to any of them has no effect on plaintiffs' case.

Under the terms of RCW 41.04.180, county and city governments are empowered to contract on behalf of their employees with health-care service contractors (as defined in RCW 48.44.010(3)) for group hospitalization and medical aid policies or plans. Defendant-bureau is one such health-care service contractor, and no question is raised concerning compliance by defendants with the provisions of RCW 41.04.180 or RCW 48.44. The issue before us revolves solely around the relationship of RCW 18.53.160 to the health-care contracts in question.

RCW 18.53 sets forth licensing and other requirements for the practice of optometry in the state of Washington. RCW 18.53.160 provides as follows:

All agencies of the state and its subdivisions, and all commissions, clinics and boards administering relief, public assistance, public welfare assistance, social security, health insurance, or health service under the laws of this state, shall accept the services of licensed optometrists for any service covered by their licenses relating to

any person receiving benefits from said agencies or sub-divisions and shall pay for such services in the same way as practitioners of other professions may be paid for similar services. None of the said governmental agencies, or agents, officials or employees thereof, including the public schools, in the performance of their duties shall in any way show discrimination among licensed ocular practitioners.

In essence, plaintiffs are arguing that this statute prohibits governmental bodies, such as the city and county, from entering into contracts with health-service contractors, such as the bureau, which discriminate against licensed optometrists.

Unfortunately, RCW 18.53.160 is not a model of clarity. It provides no ready solution to the question before us. Nevertheless, there are certain aspects of it which suggest whether plaintiffs' position is correct.

■■ The title of the 1949 act subsequently codified as RCW 18.53.160, to which we may properly refer as a source of legislative intent, *In re Kurtzman's Estate,* 65 Wn.2d 260, 396 P.2d 786 (1964), restricts the act's applicability to organizations and agencies involved with "public aid and health services." Laws of 1949, ch. 149, § 1. RCW 18.53.160's requirement of equal treatment for optometrists extending their services to individuals receiving public "benefits," in the context in which it appears, has a connotation of public dole or gratuity. Finally, the clinics, commissions, and boards discussed in the statute are for the most part explicitly limited to those engaged in welfare administration.

Based upon the foregoing references, as well as upon our views on the import of the statute as a whole, it is our judgment that RCW 18.53.160 was intended by the legislature to apply only in situations in which some governmental body provides individuals with a means of obtaining aid or health services without having to pay full value for such services. More specifically, under our interpretation the contracts in the instant case are affected by the terms of the statute only if the city, county, and bureau are engaged in administration of some form of at least partially unre-

munerated public assistance, or engaged in extending services to individual beneficiaries of such assistance.

In this case, the city, county, and bureau are not involved with administration of or with individual beneficiaries of partially or wholly unremunerated public assistance. Under the terms of RCW 41.04.190 the funds paid to the bureau by the city and county are additional compensation to their employees. The employee benefits under the health contracts represent payment for services rendered and as such can hardly be classified as gratuitous. Thus the contracts are not affected by the terms of RCW 18.53.160.[2]

The trial court's order of dismissal is affirmed.

HUNTER, HAMILTON, and NEILL, JJ., and WARD, J. Pro Tem., concur.

---

[2]Plaintiffs in their brief allude to some possible arguments concerning constitutional implications of this decision. However, judging from the record before us, none of these arguments were ever raised before the trial court and we will not consider them on appeal. *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 61 Wn.2d 461, 378 P.2d 691 (1963); *Long v. Odell,* 60 Wn.2d 151, 372 P.2d 548 (1962).