[No. 48229-2.   En Banc.   June 17, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT E. STOCKTON, *Petitioner*.

*Robert M. Quillian,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Chris Pomeroy, Deputy,* for respondent.

DOLLIVER, J.—The defendant, Robert "Duke" Stockton, appeals from his conviction of two counts of first degree extortion. In an unpublished opinion, the Court of Appeals affirmed.

The first count was based on a typewritten letter sent to the victim by defendant in which a news reporter recounted a fictional story of her murder by the defendant. The letter suggested the victim could prevent the murder if she would accompany the defendant to his psychiatrist. The second count was based on a letter from defendant which set forth various ways in which the victim and her husband might be killed if she did not agree to allocate her sexual favors between defendant and her husband.

Defendant had been hospitalized previously and treated as a manic depressive. While both letters indicated defendant's disinclination to inflict bodily harm, they implied the refusal of the victim to comply might set off a severe manic phase in which defendant would be unable to control him-

self.

Rather than comply with his demands, the victim turned the letters over to the police who placed defendant under arrest. Defendant was convicted and sentenced to two consecutive 10-year terms in a prison mental health care unit.

Although several issues were raised below, we have granted review only on the issue as to whether the defendant's request for the victim to accompany him to see his psychiatrist and his request for sexual favors constitutes a "service" within the meaning of RCW 9A.56.010(10). We hold that it does not.

█ RCW 9A.56.110 defines extortion, a class B felony, is knowingly to obtain or attempt to obtain by threat property or services of the owner . . .

In the appellate brief and during oral argument, counsel for the State contended the seeking by defendant of sexual favors by threat was an attempt to obtain the "property" of the victim. While this may well be a valid contention (*see* RCW 9A.04.110(21)), defendant was charged and tried by the State with an attempt to obtain services, not property. On appeal, the State cannot alter its charge. Matters referred to in the brief but not included in the record cannot be considered on appeal. *State v. Stevenson,* 16 Wn. App. 341, 345, 555 P.2d 1004 (1976).

"Services" is defined by RCW 9A.56.010(10) as:

[including], but . . . not limited to, labor, professional services, transportation services, electronic computer services, the supplying of hotel accommodations, restaurant services, entertainment, the supplying of equipment for use, and the supplying of commodities of a public utility nature such as gas, electricity, steam, and water . . .

Defendant contends that, although this list is not exclusive, it is limited to those activities which are of a commercial or economic nature and for which compensation is ordinarily received. He further contends his actions, if criminal, were not extortion but coercion and are covered by the coercion statute, RCW 9A.36.070:

(1) A person is guilty of coercion if by use of a threat

he compels or induces a person to engage in conduct which the latter has a legal right to abstain from, or to abstain from conduct which he has a legal right to engage in.

. . .

(3) Coercion is a gross misdemeanor.

The State contends "services" must be broadly construed to avoid the anomaly that the threat to obtain a service of commercial or economic nature would be punished as a felony (extortion) while a threat to induce a person to do or not to do something against that person's will, *e.g.*, nonconsensual sexual relations, would be punished as a misdemeanor (coercion). This argument, however, should be addressed to the Legislature, not the courts.

Even though there are differences between the Model Penal Code and the state's statutes on extortion and coercion, the comment on the Model Penal Code is relevant:

There is considerable overlap between the threatened conduct covered by the two sections [criminal coercion, § 212.5, and extortion, § 223.4]; the major difference lies in the purpose and effect of the coercive and extortionate threats. Criminal coercion punishes threats made "with purpose unlawfully to restrict another's freedom of action to his detriment," while extortion is included within the consolidated offense of theft because it is restricted to one who "obtains property of another by" threats.

(Footnote omitted.) Model Penal Code § 223.4, Comment 1, at 203 (Official Draft and Revised Comments, 1980).

The distinction between extortion and coercion is further demonstrated by examining the predecessor statutes. In Laws of 1909, ch. 249, § 358, p. 1000, the Legislature defined extortion as:

Every person, who, under circumstances not amounting to robbery, shall extort or gain any money, property or advantage, or shall induce or compel another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property, by means of force or any threat, either—

1. To accuse any person of a crime; or

2. To do any injury to any person or to any property; or

3. To publish or connive at publishing any libel; or

4. To expose or impute to any person any deformity or disgrace; or

5. To expose any secret,

Shall be guilty of extortion . . .

In Laws of 1909, ch. 249, § 362, p. 1002, coercion is de-fined as:

Every person who, with intent to compel another to do or abstain from doing an act which such other person has a right to do, or abstain from doing, shall wrongfully and unlawfully—

1. Use violence or inflict injury upon such other person or any of his family, or upon his property, or threaten such violence or injury; or

2. Deprive such person of any tool, implement or clothing, or hinder him in the use thereof; or

3. Attempt to intimidate such person by threats or force,

Shall be guilty of a misdemeanor.

RCW 9A.36.070 and 9A.56.110 continue this distinction.

While rules of statutory construction are merely aids to ascertaining legislative intent (*see* 2A C. Sands, *Statutory Construction* § 47.16 (4th ed. 1973)), the rule of ejusdem generis is particularly applicable in this case. In explaining this rule and its application, we said in *Dean v. McFarland,* 81 Wn.2d 215, 221, 500 P.2d 1244 (1972):

The *ejusdem generis* rule requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest items similar to those desig-nated by the specific terms. In short, specific terms mod-ify or restrict the application of general terms where both are used in sequence.

The kinds of services listed in the statute are those for which compensation is usually received. The phrase "includes, but is not limited to" (RCW 9A.56.010(10)) thus contemplates only those kinds of services and not the sex-ual favors which defendant was asking to be freely given to

him.

The trial court and the Court of Appeals suggest that even if "services" were limited to the kinds of things listed in the statute, still "labor" and "entertainment" were services which defendant was attempting to obtain. We believe this construction is far too broad. Although the Court of Appeals asserted that only a broad interpretation of the words would avoid thwarting the intent of the Legislature, we think the contrary is true.

In determining the meaning of words used but not defined in a statute and which have no fixed, ordinary meaning, a court must give careful consideration to the subject matter involved, the context in which the words are used, and the purpose of the statute. *Retail Store Employees Local 1001 v. Washington Surveying & Rating Bur.,* 87 Wn.2d 887, 558 P.2d 215 (1976). The statutes on first degree extortion (RCW 9A.56.120) and coercion (RCW 9A.36.070), were adopted in 1975 as part of a revised criminal code. The language of RCW 9A.36.070 clearly covers the conduct of defendant. Only by straining and twisting the language can RCW 9A.56.120 be said to cover the actions of defendant.

As we observed in *State v. Shipp,* 93 Wn.2d 510, 515–16, 610 P.2d 1322 (1980):

> Statutes which define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. "Men of common intelligence cannot be required to guess at the meaning of the enactment."

Furthermore, any ambiguity in a statute must be resolved in favor of the defendant. *State ex rel. McDonald v. Whatcom Cy. District Court,* 92 Wn.2d 35, 593 P.2d 546 (1979).

Finally, RCW 9A.04.020 provides:

> (1) The general purposes of the provisions governing the definition of offenses are:
>
> . . .
>
> (c) To give fair warning of the nature of the conduct declared to constitute an offense;

. . . (2) The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title.

This is persuasive evidence the Legislature did not consider the actions of defendant to be such as a threat to obtain "services". Given the ambiguity of the meaning of the term "services" in the context of this case, we cannot say RCW 9A.56.110 gave defendant "fair warning of the nature of the conduct declared to constitute an offense". RCW 9A.04.020.

Reversed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied August 17, 1982.